## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **LARRY G. HARRIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18−cv–0711−MJR |
| | ) | |
| **J. BALDWIN,** | ) | |
| **ATCHINS,** | ) | |
| **JEFF DENNISON,** | ) | |
| **CAMPBELL,** | ) | |
| **WALKER,** | ) | |
| **GRISHAM,** | ) | |
| **UNKNOWN PARTIES** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Larry G. Harris, an inmate in Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief and damages. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

>   (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>   (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>       (1) is frivolous, malicious, or fails to state a claim on which
>   relief may be granted; or
>       (2) seeks monetary relief from a defendant who is immune
>   from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; this action is subject to summary dismissal.

**The Complaint**

On December 7, 2016, Plaintiff was transferred from Danville Correctional Center to Big Muddy Correctional Center for disciplinary reasons. (Doc. 1, p. 3). The disciplinary ticket that he was transferred on was ultimately expunged on December 22, 2016. *Id*. However, after the expungement, Plaintiff was not returned to Danville. (Doc. 1, p. 4). Instead, he was transferred to Shawnee on March 8, 2017. *Id*. Plaintiff alleges that Shawnee is run as a "punishment prison" to deter First Amendment activity, and that as a result of his transfer, Plaintiff has been subjected to harsher conditions of confinement. *Id*. Specifically, Plaintiff alleges that he is being retaliated against for filing 2 lawsuits: *Harris v. Calloway*, 17-cv-2075-MMM, and *Harris v. Dempsey*, 17-cv-2010-SLD. *Id*.

Plaintiff alleges that, when compared to Danville, Shawnee provides prisoners with less out of cell time, less recreation time, fewer opportunities to shop at the commissary, and a dollar

2

amount limit at each shop. (Doc. 1, pp. 4-5). Shawnee also does not use the e-file system, causing Plaintiff to spend money to make copies of his lawsuits and pay for the postage to mail them. (Doc. 1, p. 5).

The conditions at Shawnee are also problematic. The paint is peeling in Plaintiff's cell. *Id*. His window does not open, and thus there is no ventilation. *Id*. The ventilation system is not clean, and the vent in Plaintiff's cell has dust and dirt. *Id*. Plaintiff breathes the dust and dirt. (Doc. 1, p. 6). Prisoners must shower in cold water because the boiler system is inadequate. *Id*. The mattresses are old, missing padding, and have urine and sweat stains on them. *Id*.

Plaintiff alleges that inmates are scheduled for 50 minutes of recreation each day, but that they only receive 25 to 30 minutes, in order to punish the medium/minimum rated prisoners housed at Shawnee. (Doc. 1, p. 7).

Plaintiff also alleges that the Shawnee kitchen also violates the Constitution. *Id*. Shawnee lacks a steam line to keep the food hot on the serving line, and there are no heaters to store the food once it is prepared. *Id*. The food is left sitting at room temperature for hours in the kitchen before being moved to the serving line. *Id*. There is also no hot water in the tray washing room, meaning that the trays, cups, and sporks are washed in cold water. (Doc. 1, p. 8). The trays frequently have a greasy film of water on top when they are served to the prisoner population. *Id*. The inmate workers are not supplied with dietary whites. *Id*. They do not wear beard nets or hair nets. *Id*. Food is stored on dirty food carts, which are also used to run trash. *Id*.

Plaintiff has Hashimoto's Thyroiditis Disease, which he alleges is exacerbated by soy consumption. *Id*. Despite this, the Shawnee Dietary department is allowed to deny Plaintiff's no soy diet. *Id*. Warden Dennison approves and sanctions this conduct. *Id*.

Plaintiff is not allowed to clean his living quarters weekly. *Id*. He is scheduled to clean his cell twice a month, but the assigned correctional officer will not leave the control booth to supervise his wing assignment, thus denying cleaning on the scheduled day. (Doc. 1, p. 9). The Majors condone this conduct in order to subject Plaintiff to harsher conditions of confinement. *Id*.

Plaintiff alleges that he is being denied due process of law because his grievances are lost or destroyed and not answered. *Id*. When he writes letters seeking an answer the grievance is denied in order to stop First Amendment activity. *Id*. This situation is created by the Wardens and Majors at Shawnee. *Id*.

Plaintiff also alleges that he is subjected to "universal punishment." *Id*. That is, when a single prisoner violates the rules, his whole wing or housing unit is punished. (Doc. 1, p. 10). A prisoner may be denied yard, gym, or dayroom without a ticket or the right to present a defense in front of the Prison Adjustment Committee, based on the conduct of another prisoner. *Id*. The C/O assigned to the wing is allowed to stay in the control booth and not do his assigned half-hour rounds. *Id*. Plaintiff alleges that the situation at Shawnee violates the Consent Decree that eliminated levels in IDOC facilities that previously distinguished between medium security institutions. (Doc. 1, pp. 10-11).

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to divide the pro se action into 7 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. All of Plaintiff's claims must be dismissed at this time:

> **Count 1** – Plaintiff was retaliated against in violation of the First Amendment for filing 2 lawsuits, by being transferred to Shawnee Correctional Center;

**Count 2** – Plaintiff's cell conditions, including lack of ventilation, cold showers, bad mattresses, dust, and otherwise unsanitary conditions, have exposed him to cruel and unusual punishment in violation of the Eighth Amendment;

**Count 3** – Plaintiff's recreation time is cut to 25 to 30 minutes a day in violation of the Eighth Amendment;

**Count 4** – The food service is unsanitary at Shawnee in violation of the Eighth Amendment;

**Count 5** – Warden Dennison approves the dietary department's action in denying Plaintiff a no-soy diet in violation of the Eighth Amendment;

**Count 6** – The Majors and Wardens at Shawnee are denying Plaintiff access to the grievance process in violation of the First Amendment;

**Count 7** – The Majors and Wardens are implementing "universal punishment" where an entire wing or block is deprived of privileges for the actions of the few in violation of the Fourteenth Amendment.

Plaintiff's claims are very similar to at least 2 other lawsuits filed in this Court: 1) *Webster v. Baldwin*, 18-cv-1014-NJR and 2) *Jefferson v. Hodge*, 13-cv-0106-GPM. Both cases argued that Shawnee Correctional Center imposed harsher conditions than other medium-security institutions in Illinois, and recited many of the same factual allegations that Plaintiff relies on. Those cases, however, attempted to bring claims under the Fourteenth Amendment Due Process Clause. They failed, because prisoners have no right to the prison placement of their choice and no due process interest in their prison assignment. *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison); *see also Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel.").

Although it would be inconceivable to believe that Plaintiff was not familiar with either of the other "punishment prison" cases, he has taken a slightly different tack. Plaintiff's **Count 1**

does not arise under a Due Process theory; rather he has alleged that his placement at Shawnee is an act of retaliation. Certain actions that would not otherwise state a claim are valid claims under a retaliation theory. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

To succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff has not stated a retaliation claim. Plaintiff has alleged that he was retaliated against for filing 2 lawsuits. The first-listed lawsuit, *Harris v. Calloway*, 2017-cv-2075 was filed on March 30, 2017, 22 days after Plaintiff entered Shawnee. None of the defendants could have transferred Plaintiff to Shawnee because of that lawsuit because Plaintiff had not filed the lawsuit prior to being transferred to Shawnee. In fact, the Complaint in that action lists Shawnee as Plaintiff's current institution.

Plaintiff's other lawsuit, 17-cv-2010-SLD, is a slightly stronger basis for a retaliation claim, as Plaintiff filed it January 18, 2017, or slightly less than 2 months before he was transferred to Shawnee. However, the problem with that lawsuit is that it names Michael Dempsey, Mary Miller, Richard Lochard, Dr. James, Dr. Justin Young, and Victor Calloway as defendants, none of whom are defendants in this action. Plaintiff has not alleged that any of the defendants in this lawsuit had notice of the January 2017 action. If they were not aware of Plaintiff's protected activity, then it is implausible that the activity could be the basis of an act of retaliation.

Plaintiff's retaliation claim suffers from other infirmities as well. Plaintiff has not clarified what action he believes is retaliatory. As discussed above, the decision to transfer Plaintiff itself is a problematic allegation of retaliation because Plaintiff's first example of protected conduct had not occurred yet when Plaintiff was transferred. Moreover, Plaintiff has not made a specific allegation that any of the named defendants were involved in the decision to transfer Plaintiff, so none of the named defendants can be held liable on that ground. To the extent that Plaintiff's claim is that the policies in place at Shawnee regarding the things he complains of are the act of retaliation and not the transfer itself, there is no allegation that the policies at issue were not in place on Plaintiff's arrival date or that the defendants changed the policies at Shawnee specifically to retaliate against Plaintiff. In fact, the existence of the 2013 suit making identical allegations makes that an implausible theory, because the variances between Illinois medium security institutions that Plaintiff complains of were in place long prior to his arrival at Shawnee. Thus, Plaintiff has not made a plausible allegation of retaliation and **Count 1** will be dismissed without prejudice for failure to state a claim.

**Counts 2-4** raise claims generally under the Eighth Amendment. The Eighth Amendment safeguards prisoners against cruel and unusual punishment. Eighth Amendment protection extends to conditions that pose a substantial risk of serious harm to an inmate's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). To establish an Eighth Amendment violation based on unconstitutional conditions of confinement, a plaintiff must satisfy an objective requirement (i.e., that he suffered a sufficiently serious deprivation) and a subjective requirement (i.e., that the defendant acted with deliberate indifference to his conditions of confinement). *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008); *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

However, **Counts 2-4** fail because Plaintiff has not named any defendant in connection with those claims or alleged that he suffered from any harm as a result of the allegations. The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Plaintiff has not mentioned any defendant in connection with **Counts 2-4** and so the claims fail. While there is a vague reference to "policies" on page 6, Plaintiff does not actually allege that any of the named defendants promulgated the policies at issue or was involved in implementing any policies. Plaintiff cannot state a viable claim by implying certain things; he must spell them out directly. Plaintiff's allegations do not notify the defendants of what they are personally being held responsible for, and so the claims fail.

Moreover, section 1983 is a tort statute, so plaintiff must have suffered a harm to have a cognizable claim. *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997). Plaintiff has additional problems in that he has not alleged that he suffered any harms as a result of the conduct he complains of in **Counts 2 and 4**. For example,

in **Count 2**, Plaintiff alleges that he is forced to breathe dust, but never alleges that he has suffered any ill result (like asthma or other breathing problems) as a result of breathing the dust. Plaintiff alleges that prisoners must take cold showers, but never alleges that he himself has taken a cold shower or suffered a harm as a result. He has alleged that some mattresses have urine and sweat stains, but not described the mattresses that he personally uses. This is insufficient to state a claim. *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) ("[Plaintiff] must also show that he suffered some cognizable harm from the overall lack of a sanitary environment and that [a defendant's] deliberate indifference caused that harm."). Plaintiff has not stated enough facts to support his claim that he personally was subjected to unconstitutional conditions of confinement in **Count 2** or alleged that those conditions injured him.

Likewise, in **Count 4**, Plaintiff has alleged numerous problems with the way the food service line is run at Shawnee. But once again, he has not articulated any harm that he personally has suffered as a result of the allegedly unsanitary conditions. In addition to the problems with naming defendants, discussed above, **Counts 2 and 4** also fail because Plaintiff has not alleged that he suffered any harm as a result of the conditions at issue.

In **Count 3**, Plaintiff has vaguely alleged that he was subjected to harm; he has stated that his body is "deteriorating" from the lack of exercise. But even taking Plaintiff's allegations as true, Plaintiff is still receiving approximately 3.5 hours of exercise per week. The Seventh Circuit has found that there is no clearly established right to more than 1 hour of exercise per week. *Henderson v. Lane*, 979 F.2d 466, 469 (7th Cir. 1992). It has also specifically suggested that four hours, which is roughly the amount of time Plaintiff receives, satisfies the Eighth Amendment. *Vasquez v. Braemer*, 586 F. App'x 224, 228 (7th Cir. 2014). As Plaintiff has no

legal right in getting more exercise than he is currently receiving, **Count 3** will be dismissed with prejudice.

In **Count 5**, Plaintiff alleges that he has a condition that makes a soy diet contraindicated, but that the Shawnee Dietary Department "is allowed to deny" Plaintiff's medical no-soy diet. As an initial matter, a review of Plaintiff's other lawsuits reveal that Plaintiff has alleged that his no-soy diet was cancelled in 2016 on the authority of Mary Miller, the Danville medical director, who is not named as a defendant in this lawsuit. *Harris v. Dempsey*, 17-cv-2010-SLD (C.D. Ill. 2017). Plaintiff has not alleged that he has a current no-soy diet medical permit. He has not alleged that anyone on the dietary staff knows that he has a no-soy diet permit or that a no-soy diet is medically necessary. Even assuming that Plaintiff's Hashimoto's Thyroiditis Disease constitutes a serious medical need, in the absence of an allegation that anyone knew that Plaintiff had it, his claim for deliberate indifference fails. Moreover, Plaintiff's claim against Warden Dennison, the only defendant he has associated by name with **Count 5,** appears to be premised on a theory that Warden Dennison has "approved, condoned, or turned a blind eye" to unconstitutional conduct. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). But in the absence of an allegation that anyone else engaged in unconstitutional conduct, Plaintiff's allegation that Warden Dennison condoned unconstitutional conduct is not plausible. Therefore, **Count 5** will be dismissed without prejudice.

**Count 6** fails as a matter of law. Plaintiff alleges that he is being deprived access to the grievance process because wardens and majors refuse to process his grievances. Plaintiff has no due process right to the grievance process. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state

prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). **Count 6** will be dismissed with prejudice as legally frivolous.

Plaintiff's last claim also fails. In **Count 7** Plaintiff alleges that he is being deprived of due process because he is denied privileges when other inmates on his cell block or wing act out. Plaintiff is essentially alleging that he is subjected to lockdowns that act to deprive him of a protected liberty interest in movement, activities, exercise, etc. This position has been squarely foreclosed. *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996) ("The Due Process Clause itself does not create a right for prisoners to leave the area around their cells, to visit other prisoners, or not be subjected to lockdowns. . . ."); *Antonelli*, 81 F.3d at 1430 ("[Plaintiff] has no general liberty interest in movement outside of his cell guaranteed by the Due Process Clause"); *Caldwell v. Miller*, 790 F.2d 589, 604-05 (7th Cir. 1986) ("[T]he continuation of the lockdown restrictions does not implicate a protected liberty interest, and is hence not subject to judicial review under the Due Process Clause."). **Count 7** will therefore be dismissed with prejudice as legally frivolous.

Plaintiff's Complaint contains an additional infirmity—specifically his use of "All John Doe Majors" as a party. This is too vague. While a plaintiff may use the "John Doe" designation to refer to specific individuals whose names are unknown, a plaintiff will run afoul of the pleading standards in *Iqbal* and *Twombly* by merely asserting that groups of prison staff members violated his constitutional rights. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Plaintiff must make plausible allegations against individuals. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

11

(finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). When a plaintiff does nothing but state that a group of staff members harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. That is, Plaintiff may not know the name of individual defendants, but he must describe the "who, what, why, where, and how" that form the basis of the claim against that person. To allow otherwise would be effectively allowing Plaintiff to amend his complaint further at will without review of this Court, a result contrary to both the local rules and § 1915A. Because the Complaint neither describes the unknown defendants nor their conduct, Plaintiff could ascribe any conduct he chooses to any number of people that occurred at any time during the relevant time period.

Plaintiff has filed a motion seeking to identify 1 of the John Doe Majors, but his motion exemplifies the problem with his approach. Plaintiff alleges that the John Doe Major working day shift, 7-3 pm is Major Hill. But the Complaint does not describe a major working the 7 to 3 pm shift as having violated Plaintiff's rights. The motion also contains additional allegations not present in the Complaint, specifically that Hill responded to grievances filed by Plaintiff and that the majors write and enforce policy at Shawnee Correctional Center. The Court does not accept piecemeal amendments to the Complaint, and if Plaintiff has to provide facts to establish liability when he identifies a John Doe defendant, then the Complaint was too vague as to that Defendant in the first place. Should Plaintiff choose to amend his complaint, he should avoid making general allegations against groups of individuals.

**Pending Motions**

On April 20, 2018, Plaintiff filed a request for a Temporary Restraining Order ("TRO"). (Doc. 3). Despite his dissatisfaction with the conditions at Shawnee, Plaintiff requests that the Court enter an order prohibiting the Illinois Department of Corrections from transferring him out of Shawnee. (Doc. 3). Plaintiff alleges that doing so will make it more difficult for him to conduct discovery.

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days. A TRO may issue without notice:

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b). Without expressing any opinion on the merits of any of Plaintiff's other claims for relief, the Court concludes that a TRO should not issue in this matter. Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*. Moreover, Plaintiff has not met the requirements of Fed. R. Civ. P. 65(b). He has not submitted an affidavit with his motion or submitted a verified Complaint. The allegations he presents in his motion are also not present in the Complaint; the Complaint does not address difficulties with prosecuting this lawsuit, making the motion beyond the scope of relief requested in this action. Finally, the appropriate time to raise issues with the discovery process is when they occur, not prospectively. For all of the above reasons, Plaintiff's request for a TRO is **DENIED**. (Doc. 3).

Plaintiff has also filed Motion to Name Defendants. (Doc. 5). In that Motion, Plaintiff specifies that "Major Grisham" should be "Terry Grissom." Plaintiff's request to change the

spelling of Defendant's name on the docket is **GRANTED**.  (Doc. 5).  However, since the Court will dismiss the Complaint without prejudice, the rest of Plaintiff's motion is **DENIED as MOOT**.  (Doc. 5).

**Disposition**

**IT IS HEREBY ORDERED** that **Counts 1-2, and 4-5** are **DISMISSED without prejudice** for failure to state a claim.  **Counts 3, 6, and 7** are **DISMISSED with prejudice** as legally frivolous.  Plaintiff's Motion for a TRO is **DENIED**.  (Doc. 3).  Plaintiff's Motion to Name Defendants is **GRANTED in part and otherwise DENIED as moot**.  (Doc. 5).  The Clerk of Court is **DIRECTED** to change Defendant "Major Grisham" to "Terry Grissom."

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, stating any facts which may exist to support his claims dismissed without prejudice (on or before June 22, 2018).  An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of this action with prejudice.  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

Plaintiff is warned, however, that the Court takes the issue of perjury seriously, and that any facts found to be untrue in the Amended Complaint may be grounds for sanctions, including

dismissal and possible criminal prosecution for perjury. *Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: May 25, 2018**

s/ MICHAEL J. REAGAN
**U.S. Chief District Judge**