# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY G. HARRIS,** | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 18−cv–0711−MJR |
| **J. BALDWIN,**<br>**ATKINS,**<br>**JEFF DENNISON,**<br>**CAMPBELL,**<br>**WALKER,**<br>**TERRY GRISSOM,**<br>**HILLE,**<br>**DRAFIS, and**<br>**FARNAR** | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Larry G. Harris, an inmate in Shawnee Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks injunctive relief and damages. This case is now before the Court for a preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Amended Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Amended Complaint**

Plaintiff originally brought suit on March 29, 2018. (Doc. 1). The Court conducted a threshold review of his case on May 25, 2018 and dismissed Counts 1-2, and 4-5 without prejudice, while dismissing Counts 3, 6, and 7 with prejudice. (Doc. 6). After Plaintiff filed a motion to reconsider, the Court changed the dismissal of Count 3 to without prejudice. (Doc. 8). After an extension, Plaintiff filed the Amended Complaint on July 26, 2018. (Doc. 11). The Court then discovered that Plaintiff had dramatically underrepresented his litigation history, and sanctioned him with a fine, to be paid prior to review of the Amended Complaint. (Doc. 14). Plaintiff paid the fine on December 3, 2018.

Plaintiff received a disciplinary ticket at Danville Correctional Center on October 15, 2016. (Doc. 11, p. 4). As a result of the ticket, Plaintiff was transferred to Big Muddy

Correctional Center on December 7, 2016. *Id*. Baldwin ordered the ticket expunged on December 23, 2016, but instead of being transferred back to Danville, Dennison permitted him to be transferred to Shawnee Correctional Center on March 8, 2017, where Dennison is warden.[1] *Id*. Jason Garnett, Warden of Big Muddy Correctional Center told Plaintiff that he was not fit to stay at Big Muddy due to his litigation history, and that he had contacted Dennison and arranged for Plaintiff to be shipped to Shawnee. (Doc. 11, p. 5). Baldwin also approved of the transfer. *Id*. Plaintiff alleges that the conditions at Shawnee are intentionally harsher than at other minimum-security prisons within the IDOC to retaliate against jailhouse lawyers. *Id*. The conditions were imposed by Dennison, Grissom, Campbell, and Walker. (Doc. 11, p. 6).

Plaintiff alleges that the conditions at Shawnee generally violate his constitutional rights. (Doc. 11, p. 7). The screen on Plaintiff's cell window is torn, allowing insects in, and the window itself must be propped open. *Id*. Except in the winter, when it is bolted shut, depriving Plaintiff of fresh air. *Id*. The ventilation system is dirty and dusty. *Id*. As a result of the inadequate ventilation, Plaintiff has suffered from nose bleeds, sinus problems, breathing problems, and sleeping problems. *Id*.

The showers and cells lack hot water. *Id*.

Plaintiff's mattress is uncomfortable and infected with scabies and bed bugs, and he has been deprived of a mattress for a short period of time. (Doc. 11, p. 9). Dennison, Campbell, Grissom, and Walker turned a blind eye to the mattress situation. *Id*.

The paint in Plaintiff's cell is peeling and gets on his belongings. (Doc. 11, p. 10). Despite this, Plaintiff is only permitted to clean his cell twice a month. (Doc. 11, p. 11).

---

[1] Plaintiff brought other suits in the Central District against the Danville employees.

Plaintiff alleges that the staff run yard and recreation times for less than scheduled, i.e., that he is permitted 30 minutes of recreation or exercise when 50 is scheduled. (Doc. 11, pp. 12-13). As a result, Plaintiff has become overweight, loss muscle mass and strength, and has difficulty sleeping. (Doc. 11, p. 12). Dennison, Grissom, Campbell, Walker, Hille, Drafis, and Farnar all condone the trimming of out-of-cell times by staff. (Doc. 11, p. 15).

The dietary department does not maintain sanitary conditions, which has caused Plaintiff to become ill, and Dennison has turned a blind eye to the situation. (Doc. 11, p. 16).

Plaintiff alleges he suffers from Hashimoto's Thyroiditis disease and daily symptoms of hypothyroidism. (Doc. 11, p. 17). He had a no soy medical diet from December 2008 until April 20, 2016. *Id*. Dennison has told Plaintiff that his no soy diet will not be reinstated because he is not allergic to soy. *Id*. Plaintiff alleges that this shows deliberate indifference to his serious medical needs. *Id*.

## Discussion

Based on the allegations of the Amended Complaint, the Court finds it convenient to divide the pro se action into 5 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court:

> **Count 1** – Dennison, Baldwin, Grissom, Campbell, Walker, and Atkins condoned Garnett's retaliatory transfer of Plaintiff to Shawnee Correctional Center based on Plaintiff's litigation and grievance activity in violation of the First Amendment;
>
> **Count 2** – Plaintiff's cell conditions, including lack of ventilation, cold showers, bad mattresses, dust, and otherwise unsanitary conditions, have exposed him to cruel and unusual punishment in violation of the Eighth Amendment and were imposed by Dennison, Grissom, Campbell, Walker, Hille, Drafis, and Farnar;
>
> **Count 3** – Dennison, Grissom, Campbell, Walker, Hille, Drafis, Farnar, Baldwin, and Atkins cut or condoned the cutting of Plaintiff's recreation time in violation of the Eighth Amendment;
>
> **Count 4** – Dennison turned a blind eye to the unsanitary food service at Shawnee in violation of the Eighth Amendment;

**Count 5** – Dennison is deliberately indifferent to Plaintiff's soy sensitivity in violation of the Eighth Amendment by refusing to order Plaintiff a soy-free diet.

As to Plaintiff's **Count 1**, to succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiff has alleged that non-defendants arranged to have him transferred to Shawnee as retaliation for his litigation and grievance activities. While personal liability is a touchstone of § 1983 litigation, those who approve, condone, or turn a blind eye to the unconstitutional conduct of others may be held liable. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Plaintiff has alleged that Garnett specifically told Dennison that he was transferring Plaintiff due to his litigation activity, and Dennison and Baldwin approved the transfer. Accordingly, **Count 1** shall proceed.

**Counts 2-4** raise claims generally under the Eighth Amendment. The Eighth Amendment safeguards prisoners against cruel and unusual punishment. Eighth Amendment protection extends to conditions that pose a substantial risk of serious harm to an inmate's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). To establish an Eighth Amendment violation based on unconstitutional conditions of confinement, a plaintiff must satisfy an objective requirement (i.e., that he suffered a sufficiently serious deprivation) and a subjective requirement (i.e., that the defendant acted with deliberate indifference to his conditions of confinement). *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008); *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

Plaintiff's allegations in **Counts 2 and 4** state conditions of confinement claims under the Eighth Amendment regarding Plaintiff's cell conditions and the food service at Shawnee. They shall be permitted to proceed.

However, **Count 3** remains problematic. The Court initially dismissed this claim with prejudice because Plaintiff's Complaint suggested that he received 3.5 hours of exercise per week and the Seventh Circuit has found that there is no clearly established right to more than 1 hour of exercise per week. *Henderson v. Lane*, 979 F.2d 466, 469 (7th Cir. 1992). Plaintiff then filed his Motion to Reconsider alleging that he only received about 25 to 30 minutes of exercise a week,[2] an amount that could potentially implicate the Constitution. The Amended Complaint states that Plaintiff is scheduled for 5 hours and 45 minutes of out-of-cell time a day, (Doc. 11, p. 6), but only receives 4 hours and 30 minutes of that time. *Id*. Elsewhere in the Amended Complaint, Plaintiff alleges that gym line is run 3 times a day for 25 to 35 minutes at a time (when it is scheduled for 50 minutes each time). (Doc. 11, pp. 12). He then alleges that day yard is run 3 times a day, for 20-30 minutes at a time (also scheduled for 50 minutes each time.) (Doc. 11, p. 13). Further, he alleges that there are night gym and night yard lines, which are run for 25 minutes when scheduled for 50. *Id*. Plaintiff also alleges that gym and yard lines are sometimes cancelled. (Doc. 11, p. 14). He also repeatedly states that he is in his cell for 21 to 22 hours a day.

It is impossible to determine from the Amended Complaint how much time Plaintiff is being given out of his cell to exercise. Plaintiff lists the time and duration of the lines, but it is not clear that he is being let out of his cell every time a line is run and construing the Amended

---

[2] The Motion to Reconsider also inconsistently put the amount of exercise at approximately 2.5 hours a week (25-30 minutes per day, 5 days a week), but the Court will construe the allegations in the light most beneficial to Plaintiff.

6

Complaint that way would suggest that Plaintiff is being given approximately 8 hours and 30 minutes out of his cell a day and would contradict his assertion that he is only let out of his cell for 2 to 3 hours every day. Plaintiff's main problem with the exercise schedule appears to be that it is not run as scheduled. But Plaintiff has no constitutional right to enforce the posted schedule; a violation of internal policies does not suggest that the Constitution has been violated. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Rather the standard is whether a prisoner is getting a sufficient amount of exercise to avoid cruel and unusual punishment. *Delaney v. DeTella*, 256 F.3d 679, 683-85 (7th Cir. 2001).

The Amended Complaint does not make it plausible that Plaintiff is getting less than 1 hour of exercise a week. It appears that yard, gym, and dayroom time is scheduled every day, and even accepting Plaintiff's allegations that he is only allowed out of his cell for 2-3 hours a day, it does not reasonably follow that 2-3 hours of out of cell time a day constitutes cruel and unusual punishment. Plaintiff has also not alleged or explained why he cannot do some exercise in his cell. *See Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988). The Court will once again dismiss this count without prejudice. Should Plaintiff wish to file another amended complaint reasserting this claim, he should focus more on the amount of exercise he actually receives.

In **Count 5**, Plaintiff alleges that Dennison, the Chief Administrative Officer ("CAO"), refuses to order him a no-soy diet because Plaintiff is not allergic to soy. Plaintiff does not allege that he is actually allergic to soy, but states that he has a condition like a soy allergy. A review of Plaintiff's other lawsuits reveal that Plaintiff has alleged that his no-soy diet was cancelled in 2016 on the authority of Mary Miller, the Danville medical director, who is not named as a defendant in this lawsuit. *Harris v. Dempsey*, 17-cv-2010-SLD (C.D. Ill. 2017).

Moreover, this is not the first time that Plaintiff has tried to hold a CAO responsible for the denial of a soy-free diet. The Seventh Circuit recently rejected Plaintiff's claims in a similar case, finding that it was reasonable for non-medical defendants to accept the judgment of medical professionals that Plaintiff was not allergic to soy and did not require a soy-free diet. *Harris v. Miller*, --F. App'x-- 2018 WL 6262306 (7th Cir. Nov. 29, 2018)

Dennison's response to Plaintiff's correspondence on the no soy diet is attached as an exhibit to the Amended Complaint. (Doc. 11, p. 33). In it, Dennison states that he has discussed Plaintiff's concerns with the facility medical director, and that Dr. David has told Dennison that Plaintiff is being appropriately followed in the hypothyroid clinic. *Id*. Plaintiff has not alleged that Dennison's comments in this letter are false, or alleged that Dennison was not following medical personnel's advice. Plaintiff has no claim against Dennison for accepting the medical judgment of others. **Count 5** will be dismissed without prejudice.

## Pending Motions

Plaintiff's request for a TRO was denied on May 25, 2018. (Doc. 6). However, the Amended Complaint still contains request for equitable relief. If Plaintiff wishes those requests to be construed as a request for a preliminary injunction, he should file a motion on that point.

## Disposition

**IT IS HEREBY ORDERED** that **Counts 1-2, and 4** survive threshold review against Dennison, Baldwin, Grissom, Campbell, Walker, Atkins, Hille, Drafis, and Farnar respectively. **Counts 3 and 5** are **DISMISSED without prejudice** for failure to state a claim.

As to **COUNTS 1-2, and 4,** Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action, and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendant(s) Dennison, Baldwin, Grissom,

Campbell, Walker, Atkins, Hille, Drafis, and Farnar. However, if Plaintiff desires to request the appointment of the United States Marshals to serve process on these Defendants, **IT IS ORDERED** that Plaintiff **SHALL FILE** a Motion for Service of Process at Government Expense, within 28 days of the date of entry of this order (on or before January 16, 2019). The Clerk of Court is **DIRECTED** to send Plaintiff a blank form Motion for Service of Process at Government Expense.

If Plaintiff does not timely file a motion for service of process at government expense, it shall be Plaintiff's responsibility to have Defendant(s) Dennison, Baldwin, Grissom, Campbell, Walker, Atkins, Hille, Drafis, and Farnar served with a summons and copy of the Complaint pursuant to Federal Rule of Civil Procedure 4.[3] Plaintiff is advised that only a non-party may serve a summons. FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshals, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for each Defendant, and shall forward the same to the United States Marshals for service. If Plaintiff does not file a motion for service of process at government expense within 28 days as ordered, the Clerk shall then prepare a summons for each Defendant, and shall forward the summonses and sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have Defendants served.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

---

[3] Federal Rule of Civil Procedure 4(m) provides that service on each defendant must be accomplished within 90 days.

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 12/19/2018**

s/ MICHAEL J. REAGAN
**United States Chief District Judge**

### Notice

After service has been achieved, the defendant(s) will enter their appearance and file an Answer to your complaint. It will likely take at least 60 days from the date of this Order to receive the defendant(s)' Answer, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the

defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.